IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                      No. CR 11-60108-AA

       Plaintiff,

                                   OPINION AND ORDER

   v.

ELIO DIAZ-DIAZ,

       Defendant.
_____

AIKEN, Chief Judge:

Defendant is charged with one count of possession with intent to distribute fifty grams of methamphetamine. Defendant moves to suppress evidence discovered and seized after a search of his bag, arguing that the warrantless search was not supported by probable cause and was not consensual. The court held an evidentiary hearing and heard testimony from two witnesses and additional argument from counsel. Defendant's motion is denied.

BACKGROUND

On July 28, 2011, a cooperating source (CS) was taken into custody on charges involving methamphetamine distribution. The CS told law enforcement detectives that defendant Elio Diaz-Diaz (also

1   - OPINION AND ORDER

known as "Gordo" and "Leo") was traveling to Bend, Oregon on a Fronteras Del Norte bus to distribute several pounds of methamphetamine to the CS. The CS told detectives the bus would be arriving in Bend that afternoon. The CS showed detectives multiple text messages from "Gordo" indicating that he was on his way to Bend from Klamath Falls. The CS told detectives that "Gordo" probably would carry the methamphetamine on his person or in a duffel bag. The government admits that the CS provided the information about defendant in the hopes of gaining a benefit with respect to the charges against the CS.

A northbound Fronteras Del Norte bus stopped at a McDonald's Restaurant in Bend at about 1:00 p.m., and defendant exited the bus, carrying a duffel bag. The detectives who watched defendant exit the bus recognized him from a previous arrest involving the seizure of methamphetamine from defendant on September 17, 2009. In that case, defendant was convicted of delivery of methamphetamine and subsequently deported from the United States.

Detectives stopped defendant in the McDonald's parking lot. Defendant acknowledged that he recognized the detectives and admitted that the duffel bag was his. According to witness testimony, defendant appeared extremely nervous, shaking and rubbing his face and nose. When detectives asked if he had any drugs in his duffel bag, defendant shook his head up and down (typically an affirmative response) while saying, "No." Defendant

2   - OPINION AND ORDER

was asked repeatedly to drop his duffel bag, but he did not do so immediately.

Defendant asserts that a police officer asked him what was in the bag, and defendant responded that he had only clothes in the bag. Eventually, defendant dropped the bag. Defendant was taken into custody and placed in handcuffs. Immediately thereafter, officers searched his duffel bag and discovered approximately two pounds of methamphetamine.

On August 25, 2011, defendant was indicted on a single count of possession with intent to distribute fifty grams of methamphetamine.

## DISCUSSION

Defendant argues that the methamphetamine seized should be suppressed because his arrest and the subsequent search of his bag was not supported by probable cause. The government responds that defendant's arrest was supported by probable cause and therefore the search of his bag was a lawful search incident to arrest.

"An officer may stop and question an individual suspected of wrongdoing if the officer can point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" United States v. Roland, 464 F.3d 899, 907 (9th Cir. 2006) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). Further, "[p]robable cause for a warrantless arrest arises when the facts and circumstances within

3    - OPINION AND ORDER

the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed . . . an offense." Crowe v. County of San Diego, 608 F.3d 406, 432 (9th Cir. 2010) (quoting Barry v. Fowler, 902 F.2d 770, 773 (9th Cir. 1990)).

Where, as here, the basis of a stop and arrest originates from an informant, courts look to several factors to determine the reliability of an informant's tip. "First, a known informant's tip is thought to be more reliable than an anonymous informant's tip." Rowland, 464 F.3d at 907. "Second, an informant with a proven track record of reliability is considered more reliable than an unproven informant." Id. at 908. "Third, the informant's tip is considered more reliable if the informant reveals the basis of knowledge of the tip — how the informant came to know the information." Id. "Finally, a tip that provides detailed predictive information about future events that is corroborated by police observation may be considered reliable, even if the tip comes from an anonymous source." Id. Ultimately, a court must look to the "totality of the circumstances" and consider the informant's "veracity" and "basis of knowledge." Illinois v. Gates, 462 U.S. 213, 238 (1983).

The CS in this case was known to police, and - according to the government and testimony at the evidentiary hearing - the CS has provided reliable information in other criminal investigations. For example, information provided by the CS has resulted in the seizure of large quantities of methamphetamine from suppliers

4    - OPINION AND ORDER

outside the Bend area on several occasions. Further, the CS had personal knowledge of defendant's activities through past dealings and cell phone contact, and he accurately predicted defendant's travel to Bend. Finally, defendant's criminal history included recent drug convictions, a fact known to officers.

Defendant does not dispute that reasonable suspicion supported his initial stop. In Rowland, for example, the Ninth Circuit found that an informant's tip provided reasonable suspicion to support a stop where the informant "made himself known to the DEA agents," the informant had personal knowledge of the defendant's activities through past dealings, and the informant provided a general description of the defendant and accurately predicted the defendant's future travel. Rowland, 464 F.3d at 908. However, the Ninth Circuit suggested that the informant's tip - similar to that in this case - would not give rise to probable cause. Id. ("Although the totality of the circumstances in this case might not be enough to establish probable cause, here we deal instead with the less demanding reasonable suspicion standard.").

Defendant likewise argues that the information from the CS and the circumstances of his stop did not provide probable cause to arrest him. Defendant contends that, as established at the evidentiary hearing, the CS is involved with the unlawful distribution of controlled substances and therefore should not be considered a reliable source for purposes of establishing probable

5   - OPINION AND ORDER

cause. Defendant further maintains that his nervousness when approached by detectives could have been attributed to his prior conviction and deportation. The government responds that the accurate and corroborated information from the informant, together with defendant's visible nervousness and "odd behavior" of nodding his head in an affirmative manner while verbally denying that he had drugs in his bag, gave rise to probable cause for arrest.

Notwithstanding its comments in Rowland, the Ninth Circuit has found probable cause based on information from a known source later corroborated by offices. See United States v. Jensen, 425 F.3d 698, 703, 705 (9th Cir. 2005); United States v. Elliott, 322 F.3d 710, 714-15 (9th Cir. 2003); United States v. Ayers, 924 F.2d 1468, 1478 (9th Cir. 1991); United States v. Elliott, 893 F.2d 220, 223-24, amended on other grounds, 904 F.2d 25 (9th Cir. 1990); United States v. Angulo-Lopez, 791 F.2d 1394, 1398 (9th Cir. 1986); United States v. Sharpe, 307 Fed. Appx. 46 (9th Cir. 2009). Here, the CS had personal contact with defendant regarding the delivery of the methamphetamine, and the CS provided information about defendant and his future travel that was corroborated by the police officers. Further, unlike the informant in Rowland who "had no known track record of reliability on this or any other case," the CS had provided reliable information to law enforcement officers in the past. Rowland, 464 F.3d at 902. The fact that the CS was also involved in criminal conduct does not necessarily detract from his

6   - OPINION AND ORDER

reliability. Finally, defendant's previous conviction and nervous behavior were reasonable considered by the officers, even if potentially innocent reasons could explain defendant's nervousness. United States v. Rodriguez, 869 F.2d 479, 483 (9th Cir. 1989) ("It is not uncommon for seemingly innocent conduct to provide the basis for probable cause.").

In sum, under the totality of the circumstances in this case, I find that the information provided to officers (and corroborated by them), along with defendant's behavior during the stop and his criminal history background, provided sufficient evidence to support the reasonable belief that defendant was engaged in the commission of narcotics trafficking. Thus, the immediate search of defendant's duffel bag was lawful as a search incident to arrest. United States v. Nohara, 3 F.3d 1239, 1243 (9th Cir. 1993) ("An officer may make a 'search incident to arrest' of the area within the arrestee's immediate control to look for weapons or destructible evidence.").

                                CONCLUSION

Defendant's Motion to Suppress (doc. 10) is DENIED.
IT IS SO ORDERED.

Dated this $\text{10}^{th}$ day of January, 2012.

                        Ann Aiken
                United States District Judge

7   - OPINION AND ORDER